Miles D. Grant, Esq.        (SBN 89766)
Phillip A. Zunshine, Esq.   (SBN 339010)
**GRANT, KESSLER & ZUNSHINE, APC**
1331 India Street, San Diego, CA 92101
Tel: 619-233-7078; Fax: 619-233-7036
miles@gkzlaw.com; phillip@gkzlaw.com

Attorneys for Johnnie L. Brown, by and through her
Successor-In-Interest JoAnn Brown

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| JOHNNIE L. BROWN, by and through her Successor-in-Interest JOANN BROWN<br><br>Plaintiff,<br><br>V.<br><br>RAMIN R. YEGANEH aka RAY YEGANEH; RICHARD M. RAKER, individually and as TRUSTEE OF THE RICHARD M. RAKER LIVING TRUST; PARKER HOME LLC; BIRCH VENTURE LLC; SHATTUCK VENTURE LLC; DURANT HOME LLC; CHABOT MORTGAGE CO.; VALLEY FINANCIAL.<br><br>Defendants. | CASE NO.  4:25-cv-10156<br><br>**COMPLAINT FOR RECOVERY OF DAMAGES UNDER RICO (18 U.S.C. § 1961, ET SEQ.), DECLARATORY RELIEF TO ESTABLISH ALTER EGO LIABILITY, AND TO SET ASIDE FRAUDULENT CONVEYANCES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges:

## PRELIMINARY ALLEGATIONS

**A.  Jurisdiction and Venue**

1.   The District Court has original jurisdiction in this action under 28 U.S.C. § 1331 because this action states a claim for relief under a federal statute, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.

/ / /

2.   The District Court has supplemental jurisdiction over Plaintiff's remaining claims under 28 U.S.C. § 1367(a) because the remaining claims are so related to the RICO claim that they form part of the same case or controversy.

3.   Venue is proper in this judicial district under 28 U.S.C. § 1391 because all Defendants reside or have their principal place of business in this judicial district.

**B.  The Parties**

1.      Plaintiff Johnnie L. Brown ("Johnnie") brings this lawsuit through her Successor-In Interest JoAnn Brown.  Johnnie died on March 3, 2025.  Despite Johnnie's death, her claims for damages survive her death.  There is no personal representative of Johnnie's estate.  JoAnn Brown is Johnnie's daughter, a residual beneficiary of Johnnie's Trust and Estate, and therefore a "successor in interest" under Section 377.11 of the California Code of Civil Procedure.

2.      Defendant RAMIN R. YEGANEH aka RAY YEGANEH ("Yeganeh") is a resident of the City of Oakland, Alameda County, California.

3.      Defendant RICHARD M. RAKER ("Raker"), individually and as TRUSTEE OF THE RICHARD M. RAKER LIVING TRUST ("Raker Trust") is a resident of the City of San Mateo, San Mateo County, California.

4.      Defendant PARKER HOME LLC ("Parker LLC") is a Wyoming limited liability company with its principal place of business in Oakland.

5.      Defendant BIRCH VENTURE LLC ("Birch LLC") is a Wyoming limited liability company with its principal place of business in Oakland.

6.      Defendant SHATTUCK VENTURE LLC ("Shattuck LLC") is a Wyoming limited liability company with its principal place of business in Oakland.

7.      Defendant DURANT HOME LLC ("Durant LLC") is a Wyoming limited liability company with its principal place of business in Oakland.

8.      Defendant CHABOT MORTGAGE CO. ("Chabot") is a business entity, form unknown, that may or may not exist.  Plaintiff alleges that Yeganeh may have created the name of Chabot to include as the beneficiary of a fraudulent Deed of Trust.

/ / /

9.      Defendant VALLEY FINANCIAL ("Valley") is a business entity, form unknown, that may or may not exist.  Plaintiff alleges that Yeganeh may have created the name of Valley to include as the beneficiary of a fraudulent Deed of Trust.

**C. Plaintiffs' Underlying Action and the Subject Judgment**

10.     On November 5, 2020, Johnnie, then an 80-year old woman, filed a lawsuit alleging claims of elder financial abuse, wrongful foreclosure, cancellation of instruments, and quiet title, Alameda County Superior Court, Case No. RG20079500 ("Underlying Action").  In the Underlying Action, Johnnie alleged that Yeganeh and others were part of a fraudulent scheme designed to steal two properties that she owned in Oakland.

11.     On July 25, 2024, after trial, the Court in the Underlying Action issued a Final Statement of Decision, ruling in part as follows:

    a.  Johnnie worked at the United States Postal Service for 43 years during which time she purchased two properties in Oakland, one on Walnut Street and one on 79th Avenue (collectively, the "Oakland Properties");

    b.  Johnnie was born in Arkansas to a family of very modest means and was a pillar of her family based on ownership of the Oakland Properties;

    c.  Johnnie lived in one of the properties and rented the other for $6,000 per month;

    d.  After retirement, the $6,000 per month rental income and Johnnie's pension income was insufficient to cover the existing mortgages on the Oakland Properties;

    e.  Johnnie met Kevin Heslin ("Heslin") at her Church.  Heslin was a loan broker and principal of Church Capital, whose business model was to attend 80 different churches to identify congregates for whom he could broker a loan;

    f.  In 2018, Johnnie fell behind on the mortgage payments for the Oakland Properties and Heslin brokered her a 2-year, $130,000 loan that was cross-collateralized on both properties ("Heslin Loan").  The Heslin Loan called for 12% interest, all interest payments made in advance, and a balloon payment of $130,000 due in two years;

/ / /

/ / /

g.  Johnnie did not have any prospect of making the balloon payment on the Heslin Loan;

h.  In 2019, Johnnie again fell behind on her mortgage payments and Heslin this time brokered her a loan with Ali D. Abayachi ("Abayachi") for $250,000, all interest paid up front at 12%, and a $252,500 balloon payment in 18 months ("Abayachi Loan"). Again, the Abayachi Loan was cross-collateralized by the Oakland Properties;

i.  At the time of signing the Abayachi Loan, Johnnie was in clear, cognitive decline;

j.  In early 2020, Johnnie defaulted on the senior mortgage. Abayachi paid roughly $17,000 to cure the senior debt and—the very next day—recorded a Notice of Default on the Abayachi Loan on the basis that Johnnie did not repay him for curing the senior debt;

k.  In August 2020, Abayachi foreclosed on the Oakland Properties. Abayachi was the only bidder at the foreclosure sale and acquired the Oakland Properties for a combined credit bid of $205,000, well below the properties' fair market value;

l.  After foreclosing on the properties, Abayachi wrote to Helsin, about Johnnie, "please inform the bitch she lost;"

m.  After Abayachi acquired the Oakland Properties at the foreclosure sale, Yeganeh went to one of the properties where he met Johnnie, who Yeganeh observed to be a little old lady. Johnnie told Yeganeh that she owned the property, that it was not for sale, and that she knew nothing about any foreclosure sale. Despite being on inquiry notice about potential irregularities in the foreclosure sale, Yeganeh immediately negotiated with Abayachi to purchase the 79th Avenue Property;

n.  Yeganeh then transferred the 79th Avenue Property to a Wyoming LLC named Elm Home, LLC that Yeganeh did not actually form until two days after the entity received the property;

o.  Yeganeh then evicted all of Johnnie's tenants from the 79th Avenue Property claiming they were squatters;

/ / /

/ / /

p.  At trial, Yeganeh claimed that he made significant contributions to the property in the form of mortgage payments, repairs, and improvements, but the Court ultimately found that the evidence he presented of these contributions was fabricated; and

q.  The Court found that Yeganeh destroyed evidence, hid evidence, and attempted to fabricate evidence favorable to his case.

12.  On July 14, 2025, the Court in the Underlying Action entered a Second Amended Judgment after Court Trial ("Subject Judgment"), a copy of which is attached as **Exhibit 1**, in favor or Johnnie and against Yeganeh for over $6.3 million, including $1.3 million in punitive damages.

**D. The Fraudulent Scheme**

13.  Yeganeh is the beneficial owner of the following four properties in Oakland (collectively, the "Yeganeh Properties"):

a.  2546 Parker Ave., Oakland, CA 94605, APN 40-3386-1 ("Parker Property");

b.  8725 Birch St., Oakland, CA 94621, APN 43-4590-2 ("Birch Property");

c.  6421 Shattuck Ave., Oakland, CA 94609, APN 16-1432-3 ("Shattuck Property"); and

d.  1829 Durant Ave., Oakland, CA 94603, APN 47-5540-10 ("Durant Property").

14.  Yeganeh owns the Yeganeh Properties through the following Wyoming limited liability Companies (collectively, the "WY LLCs"):

a.  Parker Home LLC, which owns the Parker Property;

b.  Birch Venture LLC, which owns the Birch Property;

c.  Shattuck Venture LLC, which owns the Shattuck Property; and

d.  Durant Home LLC, which owns the Durant Property.

15.  To minimize the equity in the Yeganeh Properties that might otherwise be available to Plaintiff or other creditors, Yeganeh caused the following Deeds of Trust to be recorded against the properties which Plaintiff alleges do not secure valid debts or were recorded fraudulently to avoid Yeganeh's creditors:

a.  September 1, 2022 Deed of Trust from Yeganeh on the Parker Property in favor of Raker, Recording No. 2022152441 ("Raker Parker TD"), a copy of which is attached as **Exhibit 2**;

b. March 21, 2024 Deed of Trust from Birch LLC on the Birch Property in favor of Raker, Recording No. 2024038866 ("Raker Birch TD"), a copy of which is attached as **Exhibit 3;**

c. May 1, 2024, Deed of Trust from Shattuck LLC on the Shattuck Property in favor of Chabot, Recording No. 2024055792 ("Chabot TD"), a copy of which is attached as **Exhibit 4;** and

d. May 16, 2024 Deed of Trust from Durant LLC on the Durant Property in favor of Valley, Recording No. 2024061871 ("Valley TD"), a copy of which is attached as **Exhibit 5.**

16.   Additionally, on August 27, 2025, Yeganeh caused a Trustee's Deed Upon Sale ("Raker Deed"), a copy of which is attached as **Exhibit 6**, to be recorded transferring title of the Parker Property to Raker.

17.   The Raker Parker TD, Raker Birch TD, Chabot TD, Valley TD, and Raker Deed are collectively referred to below as the "Subject Recordings."

**E. Alter Ego Allegations**

18.   Plaintiff believes and alleges that at all times herein mentioned there existed a unity of interest and ownership between Yeganeh and the WY LLCs, and each of them, that any individuality and separateness between them had ceased, and that the WY LLCs, and each of them, are the alter egos of Yeganeh and each are jointly and several liable with Yeganeh on the Subject Judgment.

19.   During the punitive damages phase of the Underlying Action, Yeganeh admitted that he was the Managing Member of the WY LLCs and that the WY LLCs have never had any bank accounts.  Despite forming the WY LLCs, Yeganeh testified under oath at a recent judgment debtor examination in the Underlying Action that he does not know whether there are other members of the WY LLCs or the identities of any individuals that were ever members of the WY LLCs.  Yeganeh also claimed that he was no longer a member of any of the WY LLCs.  Yeganeh admitted that he previously collected rents from the Yeganeh Properties, deposited the rents into his own personal bank account, and then used funds from his own account to pay expenses associated with the Yeganeh Properties.

///

20.    Adherence to the fiction of the separate existence of the WY LLCs, and each of them, as an entity distinct from Yeganeh would permit an abuse of the LLC privilege and promote injustice because, Plaintiff believes and alleges:

    a.    Yeganeh dominated and controlled the WY LLCs, and each of them, to such an extent that they controlled all of Yeganeh's assets, funds, and payments;

    b.    Yeganeh co-mingled funds with the WY LLCs;

    c.    At the time of incurring significant obligations to Plaintiff, Yeganeh had insufficient capital or revenues to meet his obligations to Plaintiff;

    d.    The WY LLCs, and each of them, used their own funds, whenever needed, to pay the obligations of Yeganeh which they chose to pay; and

    e.    Yeganeh and the WY LLCs shared bank accounts.

21.    As the alter egos of Yeganeh, each of the WY LLCs is jointly and severally liable with Yeganeh for the full amount owed Plaintiff on the Subject Judgment.

## FIRST CLAIM FOR RELIEF

### [Federal RICO 18 U.S.C. § 1964(c)]

22.    Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Preliminary Allegations.

23.    Plaintiff alleges that the conduct of Defendants constitutes racketeering activity as set forth in 18 U.S.C. § 1964(c).  Specifically, Congress has defined "racketeering" to include wire fraud or mail fraud.  Defendants engaged in multiple instances of wire fraud and mail fraud, including causing the recording of the Subject Recordings.

24.    18 U.S.C. § 1964(c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of suit, including a reasonable attorney's fee."

/ / /

/ / /

/ / /

### *Count 1: Violation of 18 U.S.C. § 1962(c)*

25.    18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . "

26.    Each of the Defendants is and has been a "person" within the meaning of 18 U.S.C § 1961(3) because each of the Defendants is capable of holding, and does hold, "a legal or beneficial interest in property."

27.    Defendants' activities include at least five acts of racketeering activity since September 2022 when they recorded the Subject Recordings.  Accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity under 18 U.S.C. § 1961(5).

28.    Beginning on or around September 2022 and continuing through the recording of the Subject Recordings, each of the Defendants conducted and participated in the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

29.    On or around September 1, 2022, Defendants formed an association-in-fact Enterprise, described below as the "Yeganeh Enterprise," within the meaning of 18 U.S.C. § 1961(4).

30.    The Yeganeh Enterprise consists of a group of "persons" associated together for the common purpose of intentionally and willfully defrauding Plaintiff by recording fraudulent Deeds and Deeds of Trust on the Yeganeh Properties, the Subject Recordings, so that there would not be any equity in the Yeganeh Properties subject to Plaintiff's efforts to enforce the Subject Judgment.

31.    The Yeganeh Enterprise is an ongoing organization that functions as a continuing unit. The Yeganeh Enterprise was created and used as a tool to effectuate Defendants' pattern of racketeering activity, all with the goal of hindering Plaintiff's efforts to enforce the Subject Judgment.

32.    All Defendants agreed to and did conduct and participate in the conduct of the Yeganeh Enterprise's affairs through a pattern of racketeering activity including wire fraud and mail fraud, and for the unlawful purpose of intentionally defrauding Plaintiff and hindering her efforts to enforce the Subject Judgment.

33.    The wire and mail fraud committed by the Defendants is based on a scheme developed and carried out by the Yeganeh Enterprise wherein Defendants fraudulently recorded the Subject Recordings against the Yeganeh Properties. The Subject Recordings were either electronically recorded with the Alameda County Recorder's Office or mailed to the Alameda County Recorder's Office, thus constituting wire fraud or mail fraud.

34.    The Yeganeh Enterprise engaged in and affected interstate commerce because the WY LLCs were formed in Wyoming and never registered to do business in California despite owning the Yeganeh Properties in California. Moreover, the WY LLCs were formed for the specific and sole purpose to help the Yeganeh Enterprise avoid the Subject Judgment.

35.    As a direct and proximate consequence of the Defendants and each of them, Plaintiff has been injured in her business and property because Plaintiff has been unable to reach the equity in the Yeganeh Properties towards satisfaction of the Subject Judgment. Without the Yeganeh Enterprises' efforts to fraudulently encumber and transfer the Yeganeh Properties, Plaintiff could have levied on and sold the Yeganeh Properties.

36.    Because of Defendants' violation of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff for treble damages, equal to $18,900,000, which is three times the amount owed on the Subject Judgment. Because of Defendants' violation of 18 U.S.C. § 1962(c), Defendants are also liable to Plaintiff for her reasonable attorney's fees.

### Count 2: Violation of 18 U.S.C. § 1962(d)

37.    18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

38.    As alleged in the preceding sections, each Defendant, at all relevant times, is and has been a "person" with the meaning of 18 U.S.C. § 1961(3).

39.    Beginning on or around September 2022 and continuing to the present, the Defendants and each Defendant agreed to and did conspire to violate 18 U.S.C. § 1962(a). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the affairs of the Yeganeh Enterprise to prevent Plaintiff from collecting the Subject Judgment.

/ / /

40.    Defendants have knowingly, willfully, and intentionally conspired to participate in the affairs of the Yeganeh Enterprise through a pattern of racketeering activity (wire fraud and mail fraud).

41.    Defendants knew that their actions were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

42.    Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

43.    As a direct and proximate consequence of the Defendants' conspiracy, Plaintiff has been injured in its property by no longer being able to reach the Yeganeh Properties, and the equity in the Yeganeh Properties, towards satisfaction of the Subject Judgment.

44.    Because of Defendants' violation of 18 U.S.C. § 1962(d), Defendants are liable to Plaintiff for treble damages, equal to $18,900,000, which is three times the amount owed on the Subject Judgment.  Because of Defendants' violation of 18 U.S.C. § 1962(d), Defendants are also liable to Plaintiff for her reasonable attorney's fees.

**SECOND CLAIM FOR RELIEF**

**[Declaratory Relief — Alter Ego]**

45.    Plaintiff re-alleges and incorporates by this reference paragraphs 1-21  of the Preliminary Allegations.

46.    An actual controversy has arisen and now exists between Plaintiff and the WY LLCs concerning whether the WY LLCs are the alter egos of Yeganeh and, as such, are jointly liable with Yeganeh on the Subject Judgment.

47.    Plaintiff desires a judicial determination of her rights and a determination that the WY LLCs are the alter egos of Yeganeh or are otherwise directly liable to Plaintiff on the Subject Judgment.

48.    A judicial determination is necessary and appropriate at this time so Plaintiff may ascertain her rights against the WY LLCs in trying to collect the Subject Judgment.  Further, as set forth in *Lopez v. Escamilla* (2020) 48 Cal.App.5th 763, filing a separate lawsuit to establish alter ego liability on a judgment is appropriate.

**THIRD CLAIM FOR RELIEF**

**[Liability on Subject Judgment]**

49.    Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Preliminary Allegations and 46-48 of the Second Claim for Relief.

50.    Based on the WY LLCs being the alter egos of Yeganeh, as alleged above, the WY LLCs, and each of them, are and must be held to be jointly liable for the full amount owed on the Subject Judgment.

51.    Further, as set forth in *Lopez v. Escamilla* (2020) 48 Cal.App.5th 763, filing a separate lawsuit to establish alter ego liability on a judgment is appropriate.

**FOURTH CLAIM FOR RELIEF**

**[Set Aside Voidable Transaction re Parker Property— Civil Code § 3439.04(a)(1)]**

52.    Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Prelimiany Allegations.

53.     On September 1, 2022, Yeganeh provided the Raker Parker TD to Raker as described in paragraph 15a above.  The Raker Parker TD is a lien and transfer as provided under the Uniform Voidable Transactions Act.

54.    On August 28, 2025, Raker recorded the Raker Deed, as described in paragraph 16 above, by which Raker purported to take title to the Parker Property following a foreclose sale.  The Raker Parker TD and the Raker Deed are collectively referred to below as the "Raker Parker Recordings."

55.    Plaintiff believes and alleges that on the dates of recording of the Raker Parker Recordings, as alleged in paragraphs 15a and 16 above, creditors, including Plaintiff, had outstanding claims against Yeganeh for which he was indebted, and that the recording of the Raker Parker Recordings was made with the actual intent to hinder, delay, or defraud the creditors of Yeganeh in violation of Civil Code § 3439.04(a)(1).

56.    Plaintiff has been generally damaged as a result of the wrongful actions of Yeganeh and Raker in recording the Raker Parker Recordings.  Accordingly, Plaintiff is entitled to recover from Raker the full amount owed on the Subject Judgment.

/ / /

57.    Defendants Yeganeh and Raker did the things herein alleged maliciously and to oppress Yeganeh's creditors.  Plaintiff is therefore entitled to punitive damages in a sum subject to proof at trial.

### FIFTH CLAIM FOR RELIEF

### [Set Aside Voidable Transaction re Parker Property—Civil Code § 3439.05]

58.     Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Preliminary Allegations and 53-54 of the Fourth Claim for Relief.

59.    Plaintiff believes and alleges that on the date of the recording of the Raker Parker Recordings, as alleged paragraphs 15a and 16 above, creditors, including Plaintiff, had outstanding claims against Yeganeh, for which he was indebted, and that the recording of the Raker Parker Recordings was made without receiving reasonably equivalent value and that Yeganeh was either insolvent at the time of the transfers or became insolvent as a result of the transfers, in violation of Civil Code § 3439.05.

60.    Plaintiff has been generally damaged as a result of the wrongful actions of Defendants Yeganeh and Raker.  Accordingly, Plaintiff is entitled to recover from Raker the full amount owed on the Subject Judgment.

61.    Defendants Yeganeh and Raker did the things herein alleged maliciously and to oppress Yeganeh's creditors.  Plaintiff is therefore entitled to punitive damages in a sum subject to proof at trial.

### SIXTH CLAIM FOR RELIEF

### [Declaratory Relief re Parker Property]

62.    Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Preliminary Allegations, 53-54 of the Fourth Claim for Relief, and 59 of the Fifth Claim for Relief.

63.    An actual controversy has arisen and now exists between Plaintiff, on the one hand, and Yeganeh and Raker, on the other hand, concerning the Raker Parker Recordings.  Plaintiff contends that the Raker Parker Recordings are not valid because the Raker Parker TD secures a Promissory Note that was provided by Parker LLC, not Yeganeh, even though only Yeganeh was listed as the Trustor on the Raker Parker TD.  As a result, the Raker Deed cannot be valid because

it followed the foreclose of the invalid Raker Parker TD. Yeganeh, Parker LLC, and Raker dispute such contentions and contend that the Raker Parker Recordings are valid.

64.    Plaintiff desires a judicial determination of his rights including a declaration that the Raker Parker TD is not a valid lien against the Parker Property because the Raker Parker TD was provided by Yeganeh even though the underlying Promissory Note was only signed by Parker LLC. Plaintiff also seeks a declaration that the Raker Deed is therefore invalid because it followed the foreclosure of the invalid Raker Parker TD.

65.    A judicial declaration is necessary and appropriate at this time so Plaintiff may ascertain her rights as to the Parker Property towards satisfaction of the Subject Judgment.

### SEVENTH CLAIM FOR RELIEF

**[Set Aside Voidable Transaction re Birch Property— Civil Code § 3439.04(a)(1)]**

66.    Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Preliminary Allegations.

67.     On March 31, 2024, Yeganeh caused Birch LLC to record the Raker Birch TD, as described in paragraph 15b above. The Raker Birch TD is a lien and transfer as provided under the Uniform Voidable Transactions Act.

68.    Plaintiff believes and alleges that on the date of the recording of the Raker Birch TD, as alleged in paragraph 15b above, creditors, including Plaintiff, had outstanding claims against Yeganeh and Birch LLC for which they were indebted, and that the recording of the Raker Birch TD was made with the actual intent to hinder, delay, or defraud the creditors of Yeganeh and Birch LLC in violation of Civil Code § 3439.04(a)(1).

69.    Plaintiff has been generally damaged as a result of the wrongful actions of Yeganeh, Birch LLC, and Raker in recording the Raker Birch TD. Accordingly, Plaintiff is entitled to recover from Birch LLC and Raker the full amount owed on the Subject Judgment.

70.    Defendants Yeganeh, Birch LLC, and Raker did the things herein alleged maliciously and to oppress Yeganeh's and Birch LLC's creditors. Plaintiff is therefore entitled to punitive damages in a sum subject to proof at trial.

/ / /

**EIGHTH CLAIM FOR RELIEF**

**[Set Aside Voidable Transaction re Birch Property—Civil Code § 3439.05]**

71.     Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Preliminary Allegations and paragraphs 67-68 of the Seventh Claim for Relief.

72.     Plaintiff believes and alleges that on the date of the recording of the Raker Birch TD Recordings, as alleged paragraph 15b above, creditors, including Plaintiff, had outstanding claims against Yeganeh and Birch LLC, for which they were indebted, and that the recording of the Raker Birch TD was made without receiving reasonably equivalent value and that Yeganeh and Birch LLC were either insolvent at the time of the transfers or became insolvent as a result of the transfers, in violation of Civil Code § 3439.05.

73.     Plaintiff has been generally damaged as a result of the wrongful actions of Defendants Yeganeh, Birch LLC, and Raker.  Accordingly, Plaintiff is entitled to recover from Birch LLC and Raker the full amount owed on the Subject Judgment.

74.     Defendants Yeganeh, Birch LLC, and Raker did the things herein alleged maliciously and to oppress Yeganeh's and Birch LLC's creditors.  Plaintiff is therefore entitled to punitive damages in a sum subject to proof at trial.

**NINTH CLAIM FOR RELIEF**

**[Declaratory Relief re Birch Property]**

75.     Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Preliminary Allegations, 67-68 of the Seventh Claim for Relief, and 72 of the Eighth Claim for Relief.

76.     An actual controversy has arisen and now exists between Plaintiff, on the one hand, and Yeganeh, Birch LLC, and Raker, on the other hand, concerning the Raker Birch TD.  Plaintiff contends that the Raker Birch TD does not secure a valid debt because Raker did not loan any money to Birch LLC.  Yeganeh, Birch LLC, and Raker dispute such contentions and contend that the Birch TD is valid.

77.     Plaintiff desires a judicial determination of her rights including a declaration that the Raker Birch TD is not a valid lien against the Birch Property because Raker did not loan any money to Birch LLC.

78.    A judicial declaration is necessary and appropriate at this time so Plaintiff may ascertain her rights as to the Birch Property towards satisfaction of the Subject Judgment.

## TENTH CLAIM FOR RELIEF

### [Set Aside Voidable Transaction re Shattuck Property — Civil Code § 3439.04(a)(1)]

79.    Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Preliminary Allegations.

80.    On May 1, 2024, Yeganeh caused Shattuck LLC to record the Chabot TD.  The Chabot TD is a lien and transfer as provided under the Uniform Voidable Transactions Act.

81.    Plaintiff believes and alleges that on the date of the recording of the Chabot TD, as alleged in paragraph 15c above, creditors, including Plaintiff, had outstanding claims against Yeganeh and Shattuck LLC for which they were indebted, and that the recording of the Chabot TD was made with the actual intent to hinder, delay, or defraud the creditors of Yeganeh and Shattuck LLC in violation of Civil Code § 3439.04(a)(1).

82.    Plaintiff has been generally damaged as a result of the wrongful actions of Yeganeh, Shattuck LLC, and Chabot in recording the Chabot TD.  Accordingly, Plaintiff is entitled to recover from Shattuck LLC and Chabot the full amount owed on the Subject Judgment.

83.    Defendants Yeganeh, Shattuck LLC, and Chabot did the things herein alleged maliciously and to oppress Yeganeh's and Shattuck LLC's creditors.  Plaintiff is therefore entitled to punitive damages in a sum subject to proof at trial.

## ELEVENTH CLAIM FOR RELIEF

### [Set Aside Voidable Transaction re Shattuck Property—Civil Code § 3439.05]

84.    Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Preliminary Allegations and 80-81 of the Tenth Claim for Relief.

85.    Plaintiff believes and alleges that on the date of the recording of the Chabot TD, as alleged in paragraph 15c above, creditors, including Plaintiff, had outstanding claims against Yeganeh and Shattuck LLC, for which they were indebted, and that the recording of the Chabot TD was made without receiving reasonably equivalent value and that Yeganeh and Shattuck LLC were either insolvent at the time of the transfers or became insolvent as a result of the transfers, in violation

of Civil Code § 3439.05.

86.    Plaintiff has been generally damaged as a result of the wrongful actions of Defendants Yeganeh, Shattuck LLC, and Chabot.  Accordingly, Plaintiff is entitled to recover from Shattuck LLC and Chabot the full amount owed on the Subject Judgment.

87.    Defendants Yeganeh, Shattuck LLC, and Chabot did the things herein alleged maliciously and to oppress Yeganeh's and Shattuck LLC's creditors.  Plaintiff is therefore entitled to punitive damages in a sum subject to proof at trial.

## TWELFTH CLAIM FOR RELIEF

### [Declaratory Relief re Shattuck Property]

88.    Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Preliminary Allegations, 80-81 of the Tenth Claim for Relief, and 85 of the Eleventh Claim for Relief.

89.    An actual controversy has arisen and now exists between Plaintiff, on the one hand, and Yeganeh, Shattuck LLC, and Chabot, on the other hand, concerning the Chabot TD.  Plaintiff contends that the Chabot TD does not secure a valid debt because Chabot did not loan any money to Shattuck LLC.  Yeganeh, Shattuck LLC, and Chabot dispute such contentions and contend that the Chabot TD is valid.

90.    Plaintiff desires a judicial determination of her rights including a declaration that the Chabot TD is not a valid lien against the Shattuck Property because Chabot did not loan any money to Shattuck LLC.

91.    A judicial declaration is necessary and appropriate at this time so Plaintiff may ascertain her rights as to the Shattuck Property towards satisfaction of the Subject Judgment.

## THIRTEENTH CLAIM FOR RELIEF

### [Set Aside Voidable Transaction re Durant Property— Civil Code § 3439.04(a)(1)]

92.    Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Preliminary Allegations.

93.     On May 16, 2024, Yeganeh caused Durant LLC to record the Valley TD.  The Valley TD is a lien and transfer as provided under the Uniform Voidable Transactions Act.

/ / /

94.    Plaintiff believes and alleges that on the date of the recording of the Valley TD, as alleged in paragraph 15d above, creditors, including Plaintiff, had outstanding claims against Yeganeh and Durant LLC for which they were indebted, and that the recording of the Valley TD was made with the actual intent to hinder, delay, or defraud the creditors of Yeganeh and Durant LLC in violation of Civil Code § 3439.04(a)(1).

95.    Plaintiff has been generally damaged as a result of the wrongful actions of Yeganeh, Durant LLC, and Valley in recording the Valley TD.  Accordingly, Plaintiff is entitled to recover from Durant LLC and Valley the full amount owed on the Subject Judgment.

96.    Defendants Yeganeh, Durant LLC, and Valley did the things herein alleged maliciously and to oppress Yeganeh's and Durant LLC's creditors.  Plaintiff is therefore entitled to punitive damages in a sum subject to proof at trial.

## FOURTEENTH CLAIM FOR RELIEF

### [Set Aside Voidable Transaction re Durant Property—Civil Code § 3439.05]

97.     Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Preliminary Allegations and 93-94 of the Thirteenth Claim for Relief.

98.    Plaintiff believes and alleges that on the date of the recording of the Valley TD, as alleged paragraph 15d above, creditors, including Plaintiff, had outstanding claims against Yeganeh and Durant LLC, for which they were indebted, and that the recording of the Valley TD was made without receiving reasonably equivalent value and that Yeganeh and Durant LLC were either insolvent at the time of the transfers or became insolvent as a result of the transfers, in violation of Civil Code § 3439.05.

99.    Plaintiff has been generally damaged as a result of the wrongful actions of Defendants Yeganeh, Durant LLC, and Valley.  Accordingly, Plaintiff is entitled to recover from Durant LLC and Valley the full amount owed on the Subject Judgment.

100.    Defendants Yeganeh, Durant LLC, and Valley did the things herein alleged maliciously and to oppress Yeganeh's and Durant LLC's creditors.  Plaintiff is therefore entitled to punitive damages in a sum subject to proof at trial.

/ / /

**FIFTEENTH CLAIM FOR RELIEF**

**[Declaratory Relief re Durant Property]**

101.    Plaintiff re-alleges and incorporates by this reference paragraphs 1-21 of the Preliminary Allegations, 93-94 of the Thirteenth Claim for Relief, and 98 of the Fourteenth Claim for Relief.

102.    An actual controversy has arisen and now exists between Plaintiff, on the one hand, and Yeganeh, Durant LLC, and Valley, on the other hand, concerning the Valley TD.  Plaintiff contends that the Valley TD does not secure a valid debt because Valley did not loan any money to Durant LLC.  Yeganeh, Durant LLC, and Valley dispute such contentions and contend that the Valley TD is valid.

103.    Plaintiff desires a judicial determination of her rights including a declaration that the Valley TD is not a valid lien against the Durant Property because Valley did not loan any money to Durant LLC.

104.    A judicial declaration is necessary and appropriate at this time so Plaintiff may ascertain her rights as to the Durant Property towards satisfaction of the Subject Judgment.

**WHEREFORE**, Plaintiff prays judgment against Defendants as follows:

**PRAYER TO THE FIRST CLAIM FOR RELIEF**

A.    For a money judgment against all Defendants in a sum in excess of $18,900,000;

B.    For attorney's fees incurred herein;

**PRAYER TO THE SECOND AND THIRD CLAIMS FOR RELIEF**

C.    For a declaration that the WY LLCs are the alter egos of Yeganeh and, as such, each of the WY LLCs are jointly and severally liable with Yeganeh on the Subject Judgment, on which over $6,300,000 is owed as of the filing of this complaint;

**PRAYER TO THE FOURTH THROUGH SIXTH CLAIMS FOR RELIEF**

D.    That the Raker Parker Recordings be set aside as voidable transactions;

E.    That the Raker Parker Recordings be determined not to be valid recordings against the Parker Property;

F.    For general damages against Raker and Parker LLC representing the full amount owed on the Subject Judgment, in a sum in excess of $6,300,000 subject to proof at the time of trial;

G.     For punitive damages against Raker and Parker LLC;

**PRAYER TO THE SEVENTH THROUGH NINTH CLAIMS FOR RELIEF**

H.     That the Raker Birch TD be set aside as a voidable transaction;

I.     That the Raker Birch TD be determined not to be a valid lien against the Birch Property because the Raker Birch TD does not secure a valid debt;

J.     For general damages against Raker and Birch LLC representing the full amount owed on the Subject Judgment, in a sum in excess of $6,300,000 subject to proof at the time of trial

K.     For punitive damages against Raker and Birch LLC in a sum subject to proof at the time of trial;

**PRAYER TO THE TENTH THROUGH TWELFTH CLAIMS FOR RELIEF**

L.     That the Chabot TD be set aside as a voidable transaction;

M.     That the Chabot TD be determined not to be a valid lien against the Shattuck Property because the Chabot TD does not secure a valid debt;

N.     For general damages against Shattuck LLC and Chabot representing the full amount owed on the Subject Judgment, in a sum in excess of $6,300,000 subject to proof at the time of trial;

O.     For punitive damages against Shattuck LLC and Chabot in a sum subject to proof at the time of trial;

**PRAYER TO THE THIRTEENTH THROUGH FIFTEENTH CLAIMS FOR RELIEF**

P.     That the Valley TD be set aside as a voidable transaction;

Q.     That the Valley TD be determined not to be a valid lien against the Durant Property because the Valley TD does not secure a valid debt;

R.     For general damages against Durant LLC and Valley representing the full amount owed on the Subject Judgment, in a sum in excess of $6,300,000 subject to proof at the time of trial;

S.     For punitive damages against Durant LLC and Valley in a sum subject to proof at the time of trial;

/ / /

COMPLAINT

**PRAYER TO ALL CLAIMS FOR RELIEF**

T.      For costs of suit herein incurred; and

U.      For such other and further relief as this Court deems fair and proper.

Dated: November 24, 2025                        GRANT, KESSLER & ZUNSHINE, APC


                                        By: _____
                                            *Phillip A. Zunshine*
                                            Phillip A. Zunshine
                                            Attorneys for Plaintiff

I:\DOCS\19-798\A-Master\Pleadings\Complaint.docx